Next up, we have case number 2413770, Victor Palencia Gomez et al. v. Chiquita Brands International v. Chiquita Brands International v. Chiquita Brands International v. Chiquita Brands International Good morning, your honors. My name is Michael Chiaffi. I represent the defendant, Chiquita Brands. Allow me to introduce my co-counsel, Melissa Murphy and Frank Dante. May it please the court. Fundamental errors infected the entire verdict and require reversal. In my time this morning, I will talk about three of them, causation, witness tampering, and the damages cap. With respect to causation, plaintiffs made the choice to sue under Colombian civil law, specifically the Colombian negligence law statute for injuries occurring in Colombia. Under settled Supreme Court precedent, Kioball and Crosby, Colombian law governs their claim. A key element of plaintiff's claim was causation, something that they had the burden to prove. Plaintiffs admit that they did not prove it, and the district court said that Colombian law wasn't clear on causation. Counsel, would I understand this to be, so this was the choice of law issue, the point, the way that we've described it is, there's a point in a case, sometimes at the beginning, sometimes somewhere in the middle, that a choice of law analysis has to be done. Correct. And what we've said is, where we're in a situation like this, similar to this, and there's a foreign choice of law issue or a foreign discussion of what foreign law is, and there's a lack of clarity based on the evidence or a lack of evidence, you could gap fill by looking to the forum's law. Correct. Okay. Is it, I read, I've read the summary judgment order. It looks to me as if the district court said, you both have presented a lot of great stuff, but I have nothing here, and nothing really has been presented to me on secondary liability, and so I need to gap fill under the well-established 11th Circuit law, and having gap filled, I'm looking to Florida law under aiding and abetting liability, and it does the substantial assistance test. Where do I have that wrong? A couple of things, Your Honor. First of all, procedurally in the case, there was a choice of law analysis, and the court ruled that Colombian law should apply. Right. Well, Colombian switched. He switched sui sponte when he got to the summary judgment, but this is a unique- But counsel, it's not a switch. What we've said is that where we don't know or where it's not, in other words, no federal United States judge is an expert in foreign law, and so it's incumbent upon the parties to present that to the judge, and where that doesn't happen or where there's lack of clarity, the judge is allowed to assume that the foreign law would be the law of the forum in which the court sits. So it's not as if he's not applying Colombian law. He's just filling a gap where none has been provided by the parties. Your Honor, those cases, mutual services, Meridian Yachts, CAVIC, those cases don't apply here because this is a unique kind of case. When plaintiffs bring a claim in federal court under foreign law, a foreign civil statute for extraterritorial torts, foreign law alone, foreign law alone must be applied, and it's part of the plaintiff's case to prove. If foreign law is unclear, to get to your point precisely, if foreign law is unclear, then the remedy is dismissal, as Kioball and Crosby say, not replacement with foreign law. But those cases deal with very different issues and not the issue we have here. Kioball, for example, was about extraterritoriality jurisdiction, whether we apply extraterritoriality jurisdiction under the alien tort statute, and here in the kidnapping statutes and the torture statutes, terrorism statutes. We don't have that situation here. We are applying a Colombian statute, and we've gotten past that, and the question is, once we get past that, how do we gap fill where you all don't do that, where you don't present evidence to the court or the evidence is in dispute? And so that doesn't seem to have been addressed by those Supreme Court cases, but we have seemed to have addressed that situation. Your Honor, I would submit that Crosby addresses it directly, and Kioball, although it dealt with the extraterritorial application of the ATS, in this part of the opinion where they're talking about Crosby and that foreign law alone must be applied, they were talking specifically about transitory torts, this kind of case. So we think the Supreme Court precedent is absolutely clear in Kioball and Crosby because of the narrow type of case. That is a case brought under a foreign civil law for all extraterritorial torts. Foreign law alone has to apply. Let's assume for the moment I don't agree with you that those two cases apply here for that proposition. Tell me how you still would prevail. Well, we would still prevail for a couple of reasons. First of all, if you look at mutual services, meridian yachts, those cases don't apply because in those cases the parties really did not put forward an explanation of foreign law. We did extensively in this particular case, and we'll get into that in a few minutes. But Your Honor, if you applied the forum law, the law of Florida, the result is the same. Florida law requires but-for causation in these circumstances. So that gets to a problem that your opposing counsel identifies, and that is that whether that's true or not, the jury instruction that you all submitted was a substantial assistance instruction. In other words, you didn't submit a jury instruction when the court came down and said, all right, I'm applying Florida law, and it came down to charge conference. The instruction you submitted was not a but-for causation. Judge, here's the instruction. You submitted a substantial assistance instruction. Well, Judge, we submitted that in the alternative. We're allowed to submit alternative instructions. Our instruction, however, did implicate but-for causation because twice, both times we submitted and argued for Florida law. My friends on the other side objected, and they objected specifically in the record that we were suggesting to the court a but-for causation standard. So we would disagree. Also in this court's recent holding... Where would I look in the record to find your preservation of the but-for causation standard issue? Your Honor, it's in our jury instructions specifically... In both the written instructions we submitted, but also during the charging conference, we argued vociferously for but-for causation. The Florida instructions... Let me be clear. But for Columbian law? You clearly argued for but-for causation, but you argued in the context of, Judge, you should be applying Columbian law, and Columbian law is a but-for causation standard. But where the judge said, no, I'm applying the Florida law based on the prior ruling and rejecting the new submission that you guys presented, the court then said, all right, give me Florida law, and both of you presented an instruction, and that instruction both had... There were some wording differences, but both relied on substantial assistance. We did, but in our instruction, we made it clear that proximate cause, and this is true under Florida law, that proximate cause is required under the standard of substantial assistance. And we cited a case called Dover v. R.J. Reynolds, which holds for that proposition. And again, as I said, the plaintiffs themselves, my friends on the other side, objected because they said our Florida instructions implicated but-for causation. So we think that this argument that they raised is really a red herring. And furthermore, under the court's recent decision in Holland, a party cannot waive or forfeit the correct precedent or the correct application of law. So we submit on both of those things. This forfeiture argument is just a red herring. Can I ask one other question regarding this issue? Yes, sir. So, I hear you to be arguing that one error that the district court made, and let me go back, in the summary judgment order, it was clear the district court said, I'm gap-filling with Florida law. Yes. But when it came time for the charge conference and to write the jury instructions, and there's discussion, the judge is asked, Judge, what are you applying? And the judge says... He says, I'm applying federal common law. That seems to be a problem, is it not? It's a big problem. Why? Because federal common law cannot apply. Everyone agrees. My friends on the other side agree. We agree. The judge couldn't gap-fill with federal common law. So let's assume I agree. What difference does that make? In other words, what is the big difference between what at least the judge understood federal common law to be and what Florida would be for at least their view of the aid or inability or liability for under the substantial assistance? Here's the problem. The judge essentially was cobbling together federal common law from material support, material participation, ATS cases, BOEM and Ashley specifically. And you can see that in the judge's summary judgment ruling. What's egregious about that, and that's really at 4371 of the record, what's egregious about that is this court in Cordona seven years ago dismissed all of those claims. The judge put them in through the back door at 4371 when he said that but for causation logically has no play under federal and state common law doctrine under United States jurisprudence. The error isn't at the summary judgment part. I mean, he said that Florida law was X, and that gets to the forfeiture waiver issue that I know you disagree with. But we're beyond that. So the district court said, I'm gap-filling with what I understand Florida law to be. He said what he thought Florida law would be, but you're right, he did happen to cite in addition some federal common law cases. But when it came time for the charge conference and when said, what are you applying now, judge? He says multiple times, I'm applying federal common law. He does, and we objected. I'm saying that I think that could be error, but my next question is how would that error have any effect? What is the difference between federal common law Boehm versus, or Twitter, and what Florida standard would or should have been? Because Florida law requires but for causation. Remember, this is a negligence tort case. It's not a material participation case. Doesn't arise under the ATS, as I said, this court dismissed those claims. It's a negligence tort case. For negligence torts, Florida requires but for causation both in the primary and secondary context. That's the big difference. There's a big difference between causing something and participating in something or being a factor in something. And specifically in Otto Candies, this court held that under Florida aiding and abetting substantial assistance standard, it demands that the action of the aider and abetter approximately cause the harm on which the primary liability is predicated. And that's at 1183 in the opinion. Furthermore, in that particular case, the court held that the fraud, there's a fraud aiding and abetting case, could not have existed without defendant's assistance. So it's a big difference, but for, which is a clear hurdle, which requires the plaintiff to prove that but for the defendant's conduct, the injury wouldn't have occurred. That's a big difference than saying you can be held liable for participating. The huge difference. Your Honor, I see my time is up. Could I move for a minute to the witness tampering issue? We think it is of concern and that this court should address it. You can have a minute. Thank you, Your Honor. The evidence we wanted to submit was highly probative, which went to the credibility of two key witnesses that the plaintiffs relied on, Hospoon and Mangones. They testified in a proceeding in Columbia known as Justice and Peace, identifying certain individuals and taking command responsibility for their killings. The plaintiffs relied on that. One plaintiff's lawyer said it was the most important piece of evidence about AUC involvement and that's at 10-412 of the record. In addition, their expert, Kaplan, relied heavily on this testimony of Justice and Peace by Hospoon and Mangones. What we sought to introduce into evidence was a showing that those two witnesses had been tampered with and been offered bribes by Collinsworth and others. The evidence was substantial, Your Honor. For example, and this is at 13139 of the record, sorry, at 13438 of the record, we had emails from two Collinsworth, from one of his colleagues, which said that Mangones is pissed, that he needs his next $10,000 payment. If not, he's liable not to say what we want him to say at the next Justice and Peace hearing. Furthermore, it was imperative to put into evidence all of these emails, which came from the plaintiffs themselves, in order to undermine the credibility of these two critical witnesses. You've got to bring it to a close or you're going to be eating into your rebuttal time. Thank you, Your Honor. The district court, in ruling on this evidence, simply ruled, and this is at 8666 of the record, simply said the plaintiff's lawyers are denying witness tampering and payments. Therefore, and they told me they're going to say the same thing on the stand, therefore, it's minimally probative. Your Honors, nothing could be more probative than cross-examining witnesses, and we wanted to cross-examine Collinsworth, who's saying it didn't happen with their prior statements that say exactly that it did happen. Yeah, but I think the district judge, it seems like what the district judge was saying here, maybe reading between the lines, is, look, I don't want this trial to become sort of a circus about what Collinsworth did, and so the district court gave you a little bit of this evidence, but said you couldn't call Collinsworth to the stand, right? Right, but we had to call Collinsworth because there's a key piece of evidence that Collinsworth offered a $3 to $5 million bribe to Hasbun. Hasbun didn't remember. He did verify that the bribe was made while he was in prison in Columbia. He didn't know the name of the American lawyer. Couldn't recall it because it was given. There's an email, sorry, there's testimony in the Drummond case, sworn testimony from Collinsworth, and this is at... Yeah, but that didn't, did that exist at the time, this trial? Yes, it's at 7399 of the record, Your Honor. This is sworn testimony from Collinsworth in which he's asked, in Chiquita, did you offer a contingent, and the $3 to $5 million was contingent on the plaintiff's winning the case. He was asked, did you, in the Chiquita case, offer a contingent fee to a witness? And Collinsworth says, yes, we did it with Hasbun. Nothing could have been more probative, and we submit that the judge abused his discretion, and that's, in and of itself, a basis for a new trial. Thank you, Your Honors. Thank you, Your Honors. May it please the Court, Paul Hoffman for the plaintiffs in this appeal, in the epilese. Let me address first the choice of law issue, and I think, Judge Luck, I think you got that exactly right in the sense that... Let's talk about the part that I got right. Am I right that there was, that the district court here applied federal common law when it came time at trial to instruct the jury on the causation element? I don't think that that is right, Your Honor. I think it's not right in the sense that... I'm not completely right. Well... It's okay. I'm not right a lot. What the judge said, and remember, this is in, the judge showed exceptional patience throughout this whole... He's a patient man. I agree with you. And the charging conference was, you know, a day. Let me focus in, can I just focus in on a portion of it? And this is at, I think we're using the appendix numbers, right? So 13,158 to 60. Appellant's counsel says, so I think the biggest issue here that we have is whether, and wasn't sure, Your Honor, if you were adopting federal common law, or Florida common law, or federal common law. I know there was a discussion of Florida common law and federal common law in the summary judgment decision. It wasn't necessarily clear to us from the instructions which one was being applied or if it's just the court jumps in and says, I believe it's federal. Appellant's counsel says, federal. Okay, sure. I will apply federal. I mean, the court says, I don't think there's much of a difference, but I was basically applying what I believe to be federal common law. There's some more discussion. And then the court says, well, maybe I should modify my statement. Federal common law in connection with aiding and abetting, as opposed to just federal common law generally. So maybe I need to refine my statement. Appellant's counsel says, understood, Your Honor. I think we are talking about the same thing. We are really talking about secondary liability is secondary liability. We are talking about under the federal common law, the court says, yes. I think that what the judge also said, and I'm sorry, I don't have the hindsight to it. What the judge also says, I told you what I was doing in the summary judgment order. That's what I'm doing. And what he said in the summary judgment order was he was gap-filling, applying Florida law, Florida common law, local law default. That is what you would do under traditional reasoning. I understand that. But he seems pretty clear there. You're right. I mean, I think his intention was to do what happened in summary judgment. But I don't think appellant's counsel was, at least there, was incorrect to say, you relied on both, and so I just want to make sure. And the court is pretty emphatic that it is federal common law as to aid or abetting liability. But then what he does is he applies aiding and abetting standards that are from Florida common law, from cases like Leste, Logan. Let's assume he doesn't. I guess my question then is, what is the difference between what he did in the instructions and what Florida common law would be on this issue? I don't think federal common law is different in terms of the basic standard. I think it's Restatement 876B. And Restatement 876B says knowing substantial assistance. That's what it says. But your opposing counsel says the difference is the connection between the foreseeability element and the connection between what, in general, like some bad harm or the specific harm that befell. Well, what the other side argues is that under Twitter, you have to know pretty much the names of the people that are getting killed. Well, that's a bit of an exaggeration, but OK. But basically, that's not much different, because what we're saying is that the application of aiding and abetting principles are, if you know that the entity that you are giving substantial assistance to, and there's tons of evidence of substantial assistance. It's not just money. It's the use of ports. It's giving them guns. It's a whole litany of facts, right? To a terrorist organization, right, that is killing people that they know are killing people by the assistance that they're giving. That's what the evidence is. Well, I understand that maybe what the evidence showed, but we're not really talking about that. We're talking about what the law that the jury was given by the court. But what I'm saying is that there's nothing in Twitter, and that's the main thing that they rely on. There's nothing in Twitter that says that if you give that kind of assistance to an ongoing mass murder campaign done by a terrorist organization. It's not clear, though. The comparison isn't between Twitter and Florida common law. It's between what the judge instructed, what he believed to be federal common law, compared to Florida common law. Well, it's not clear, then, what is meant by that, because what he actually did is he instructed them, by the way, using the same kind of words that the defendants gave him. The defendants gave him a proposed instruction that's knowing substantial assistance. That's what he did. Right. So could you just address that? I think this is the way I would rephrase Judge Locke's questions a little bit, is, is this, is the instruction that was given here a correct instruction of what Florida law would require? We believe it is, Your Honor. Explain that to me. Why is it correct, as a matter of Florida law, to give this kind of instruction? The cases in Florida common law that deal with aiding and abetting liability, the ones that are mainly cited are Leste, Logan v. Morgan-Bocius, and Otto Candies, right? So we discussed Otto. Yeah. But, but all of those cases, and in fact, the difference that we have about Otto Candies is that the statement, there's nothing in Otto Candies that says that it's but for causation. It doesn't say that. No, he, he, he, your opposing counsel didn't quite say that. What he said, though, is the foreseeability element needs to be linked more particularly to the harm that befell. Well, and, and what we would say, and, and do a general harm. Well, what we're saying is that the foreseeability is, if you give substantial assistance to a terrorist organization that is engaged in a killing campaign in the very regions that you're operating, it is foreseeable that people like our clients are going to be killed. That is how we see it. That's the right instruction. That's what the jury found. The jury, the jury was told, if you find that Chiquita knowingly provided substantial assistance that foreseeably increased the risk to people like these plaintiffs, and then, in fact, in the verdict, they had to fine for every plaintiff that way, that's exactly right under Florida common law. I think Otto Candies says increasing the risk of harm is the connecting tissue for foreseeability. I think what Otto Candies does, and it's an easier case factually in Otto Candies, right, is the, the, the link is substantiality, right? I mean, the, the issue in aiding and abetting liability always is a, there's a continuum of causation, right? At one end, you've got the social media cases that have very extended chains of causation, right? And, and that's where they come out. And then on Halberstam, which, by the way, Twitter says, you know, that is the 876B case. In Halberstam, the, the person who's found liable didn't know anything about the murder. But what, what she was involved in was she knew that there was an ongoing burglary thing, right? And so, and, and the equivalent here is Chiquita knew what it was doing when it was giving substantial assistance to the AUC. In fact, they were saying they were terrified that the AUC, they tried to bolster their duress defense. You know, counsel, again, you're, you're talking about the evidence here, but this is about what instructions the, the, what legal instructions the jury was given in order to evaluate that evidence. Well, I agree with that. But, but, but in evaluating a jury instruction, when you, you take into account the case that was presented, right? That's not true. I mean, that's simply not. That, that, I mean, you need to like put in name, the right names of the parties, and you might need to put the right victim of the party, but the law is the law. But, but, but I guess what I'm saying is that Lestie, Logan, and Otto Chandler's uses the same standard that the judge used as Florida common, aiding and abetting standards. That's, I mean, that's our position. Lestie is a middle district of Florida case, right? So, and Otto's one of ours. Yeah. So, I mean, I guess, I guess I'm, we, we're not bound by the middle district of Florida, right? To its interpretation of Florida law. So, that's why, that's kind of, you know, what, what, what do you have from Florida, like the Florida Supreme Court or some kind of Florida appellate court that suggests that this jury instruction is a correct statement of Florida law? Well, the, the case is that, I mean, Lestie is a Florida case, I believe, isn't it? Lestie versus Wells Fargo? Yeah. It's a middle district of Florida case. It's a middle district, yeah. So, it's a federal case, right? Isn't Logan a second DCA case? Is, am I wrong on that? That's right. Yeah, Logan versus Morgan. Yeah, it is. Yeah, it is. And so, you would say, if we look at that, then that's where we're at. Yeah, I mean, I think Logan is in this, you know, basically is applying the same standard. And it's the standard that they propose to the judge, and it's the standard we propose to the judge in terms of, of aiding and abetting liability. So there's no, I mean, it's completely consistent with, with Florida law. I want to ask you about the other issue your opposing counsel brought up.  I don't want to cut you off anymore. No, that's fine. It's obvious I want to answer your question. We have a limited time left. Okay, so, you know, the district court says, listen, I don't want to sideshow on this thing. And it requires sort of a heightened showing in order to call an attorney for one side to the stand. But I'm going to let you be able to examine witnesses on some of this stuff. So, I understand that ruling. And with regard to Hasbun, I think is the name. I'm sure I'm mispronouncing it, but, but Hasbun, there clearly was stuff that came in both through cross-examination of the expert and through his own testimony in which he was examined for which he was confronted with some of this stuff. What about for, is it Mangonis? Mangonis. Mangonis, thank you. With regard to Mangonis, because I don't see where there was an opportunity with regard to him to cross-examine him outside of what Mr. Collingsworth would have brought in and the evidence related to him. Well, I mean. First of all, is my premise right? Well, he wasn't, he wasn't put on as a witness by any, by either party and he wasn't deposed. He was not. He was not deposed. That's right. So, how else could they have gotten in that, because, because your expert clearly relied on Mangonis. He admitted as much. Where else could they have gotten in the bribery allegations regarding him other than through Mr. Collingsworth? Well, I mean, he, what they could have, well, first of all, I think it's important to say with respect to Judge Marra that he dealt with this issue for almost 10 years. I understand. He started dealing with it in 2015. He dealt with it in terms of discovery. Counsel, there is, you will hear no critique of the way that Judge Marra handled this case from me. That's not my question. My question is, where is there that they could have brought in the evidence or the allegations of bribery for Mangonis without the Collingsworth information? Well, they could have asked hypothetical questions of Mr. Kaplan, for one thing, Professor Kaplan, which they didn't do. I mean, they really didn't do it. How is a hypothetical question going to... Would it change your opinion of... But there needs to be a premise for that. In other words, there needs to be an evidentiary premise that they're able to admit. They did do that for, they were able to for Hasbun, but how are they able to for Mangonis? That's my question. Well, it's not clear what they could have, I mean... Right. It's not clear how they could have done it outside of the Collingsworth information, right? Right. Well, but, I mean, what the judge did, right, was to try to balance, I think as Judge Brashley said, was trying to figure out how to have this six-week trial. I agree. And the way to balance it, there's no doubt about it. And I think with regard to Hasbun, the balance is clearly there. But part of that balance is, what is the need versus what is the prejudice and confusion and all the other 403 factors? With regard to Hasbun, because there was alternative ways to do it, there's no reason to bring this in to create the sideshow. Well... But how do you strike that balance, I guess, is the question. Well, one of the... Also, how do you strike that balance with regard to Mangonis, where there doesn't seem to have been any other avenue that I can tell, and tell me if I'm wrong, to be able to bring this information out? Well, I mean, first of all, in the balance, right, it's probative value versus prejudice, right? The prejudice of having one of the trial lawyers being cross-examined in this trial is one thing. If the judge hadn't made that ruling, he would have had to sever Mr. Collingsworth's client, right? Which didn't happen because he wasn't allowing Mr. Collingsworth to be cross-examined in front of the jury, right? They didn't, on the document part of it, I think they haven't really preserved that issue because they haven't really litigated it. They haven't raised it... The motion in Limine didn't ask... Well, I think in the... Well, what they didn't do is they never, I think, presented particular documents for the judge to make a decision on that. In the motion in Limine, the motion in Limine seemed pretty detailed about what emails and documents they wanted to bring in, and for that showing, and what the judge said is I've reviewed it, and I don't want this to be a sideshow, and there is some other evidence you could bring in. The other issue... Well, first of all, he did say they could cross-examine any non-attorney witness, so they could have brought a non-attorney witness. I don't know what they had or didn't have on that. I guess what I'm asking is what could they have done for Mr. Mangones? I don't know what they had with respect to... I just don't know. Your point is you don't know where they got the information that they... Anyway, right? I mean, that's... Right. I mean, I don't know that, and so I don't know what they could have done. I know what the judge did, right? What the judge did was say you can't cross-examine Mr. Collingsworth in front of the jury. You can ask non-attorney witnesses whatever you want. You can cross-examine experts about the impact of this on them. The other thing I think is important to remember that with respect to Mangones in particular, there are only three plaintiffs that have anything to do with the Mangones confession, right? That's certainly true. And so there are six that have absolutely nothing to do with that. And even out of those, I believe there are eyewitness... There's eyewitness testimony or other testimony connecting the AUC to those particular killings. And that's the only issue that this was relevant to, right? It's not about any of the causation issues. It's not about substantial assistance. It's not about any of those things. It's about whether the AUC was connected to these three particular killings, right? And what came out in the justice and peace process, and I think it's important that Professor Kaplan testified about the fact that these are confessions and are verified by a very intensive process that includes prosecutors looking into the confessions to make sure that they're accurate. Professor Kaplan testified about their expert gave contrary testimony. In other words, the jury heard what they should do with this information. And what the judge did, and I think it's important that what he did is he exercised discretion in a really tough call, right? What he did is he saw both sides of this issue. He saw the prejudice that could take place for all the eight other cases. I mean, counsel says, you know, other counsel might be involved. There's no evidence that anybody, he's got evidence about Mr. Collingsworth, who represented one client in this. Not about anybody else, and not about any of the other clients, and so I think what the judge did was exercise his discretion in not making this a sideshow. But giving them the opportunity to put in the husband deposition where he testified about this stuff. So in closing argument, they had complete reign to make this argument and made it one of their five main points in their closing argument. And so it was aired in front of this jury, and I guess all we can say is that the judge, given what he had in front of him, made a call within his discretion, and it was not an abuse of discretion to do it that way. I know, I've seen, I've gone over my time. I'd like to ask one more question about the jury instruction. So I think I understand their argument to be something along the lines of this, that with a negligence claim, which is what you brought, the thing that Florida law requires is but-for causation, which is not, you know, you've got some principles about aiding and abetting liability and stuff like that, but that's not really consistent with the idea of negligence and the causation standard for negligence. Well, I mean, one thing that I think is important to understand is that the Colombian law is not just negligence, it's general tort liability that includes intentional acts. And so it's not just a negligence statute. I mean, the reasonable business person standard that everybody agreed on was the entryway into causation. But in fact, it's not just a negligence statute. And what the judge said, and I think it's right, he said in a secondary liability case like this, you're not talking about primary violator kinds of principles with respect to negligence. You're talking about did they engage, did they knowingly provide substantial assistance that assisted the primary violator, the AUC, which is the one that did the killings. And I think that's the appropriate way to look at it. That's the right causation standard for a case like this. Thank you. Thank you. The major difference between the two instructions, as Judge Brasher, you were getting at, is under the tort framework and a negligence tort, there has to be a connection between the conduct and the injury, and that connection has to be a but-for conduct. In other words, as Justice Gorsuch said in the Comcast case, no principle is more well established in the law than negligence tort liability requires but-for causation. That is, the plaintiff must prove but-for the defendant's conduct, the injury wouldn't have occurred. That nexus is really important, and that doesn't exist. Right. It seems that, I mean, his response to that that he just gave me just then was that, look, this really isn't a negligence claim. I mean, it's not like your corporation was just sending money out to people and they accidentally sent it to this group, right? It's more of a, you were cooperating with the group, and in that kind of claim, maybe Florida doesn't even really have that kind of claim, but if they did, it would be more like an aiding and abetting kind of thing. Well, I think they're trying to have it both ways, Your Honor. First of all, it's not an aiding and abetting case. That aiding and abetting claim is not in it. That's one of the things this court dismissed in Cordona, because the aiding and abetting claims were pled in this case as ancillary or in support of the ATS claim. That was dismissed. This proceeded, and this is really important, and it goes back to why Colombian law applies, with all respect. Judge Luck, I understand your position, but this is a very specific kind of case brought under the civil law of another country for purely extraterritorial torts. Under those circumstances, that law has to apply, but again, it's not an aiding and abetting case. Those claims don't exist, and so they're trying to have it both ways. You look in their brief, the middle part of their brief, they say, well, intent's not required because this was a negligence claim. So they can't have it both ways. That brings me to the sideshow point. They're trying to have it both ways. They created this issue by pampering and offering bribes to two key witnesses. They can't come in here and complain to this court that somehow it would be a sideshow, people would be tarred, et cetera. You were allowed to bring, may I ask you to look at this? You were allowed to bring in evidence under the district court's ruling, and in fact did as regard, okay, let me finish, and regarding Hasbin. As to Mangones, why not call him? Well, Your Honor, a lot of this evidence we didn't get until the closing.  Why not call him? Well, we couldn't find him. I mean, I don't, we just couldn't find him. He's in Colombian jungle someplace, but we couldn't do it, but we thought we had the evidence from Collinsworth himself and his colleagues where they said, hey, if we don't pay him his next $10,000, he's probably not going to say what we want him to say, a justice and peace. I mean, that, to me, was good evidence. Your Honor, going back to the sideshow, everyone benefited from Kaplan's testimony, which he relied heavily, and as my friend on the other side pointed out to you, he was saying how pristine the justice and peace process was, how it's, there's cooperation. We needed to cross-examine him with this evidence that was excluded to show, no, it was tainted because these witnesses were tampered with and bribed, and that was excluded. Going back to the opportunity to present the Hasbin testimony to the jury, that was very, very narrow and clipped as a result of the judge's ruling excluding that testimony from Collinsworth I mentioned a little bit earlier, and that is where he testified under oath in the Chiquita case, you offered a contingent bribe to Hasbin. I, I, I'm sorry, I, I, I'm, is my, is my time up? Yes. May I finish, Your Honor? One sentence, finish your sentence, that's it. I wasn't able, I wasn't, yes, ma'am, I wasn't able to tie it up because Hasbin couldn't remember if it was Collinsworth, but Collinsworth's testimony ties it up. Thank you. Thank you, Your Honors.